# CONTINUATION IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Trevor Arnold, being first duly sworn, hereby depose and state as follows:

## Introduction

1. I have been a police officer for the Lansing Police Department for fifteen years. I am currently assigned as a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and I have served as such since June 2022. I have conducted numerous investigations into the unlawful possession and use of firearms, the possession and distribution of controlled substances, and conspiracies associated with firearm and narcotic offenses. I am presently assigned to ATF's Lansing Office.

2. I make this Continuation in support of an Application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of an electronic device (hereinafter the "**Subject Device**") and its contents, which is described as follows and in **Attachment A**: a black Apple iPhone, located in the possession of Valentino Dwayne WALLACE upon his arrest on February 4, 2023.

3. The applied-for warrant would authorize the forensic examination of the **Subject Device** for the purpose of identifying the electronically stored data particularly described in **Attachment B**.

4. Based on the below events, there is probable cause to believe that there will be evidence indicating Valentino WALLACE possessed a machinegun, in violation of 18 U.S.C. § 922(o), located on the **Subject Device**.

1

5. The facts in this Continuation come from my personal observations, my training and experience, and information obtained from other law enforcement officers, agents, and witnesses. This Continuation is intended to show merely that there is sufficient probable cause for the requested search of the **Subject Device** and does not set forth all my knowledge about this matter.

## Probable Cause

Arrest – 18 U.S.C. § 922(o), Possession of a Machinegun

6. On February 4, 2023, Lansing Police Department's Violent Crime Initiative ("VCI") Team initiated a traffic stop on a vehicle in which WALLACE was traveling in order to execute a search warrant.

7. When the car in which WALLACE was travelling stopped, WALLACE quickly exited the car from the back driver's seat, looked back at the marked police patrol car, and fled from the traffic stop on foot. Police chased WALLACE on foot as he ran through backyards. Police verbally ordered WALLACE to stop. WALLACE did not stop but continued to run from police.

8. During the chase, WALLACE's hoodie pocket appeared to be weighed down by an object.

9. Also during the chase, WALLACE was holding onto his waistband with one hand and his other hand was flailing freely.

10. Eventually WALLACE tripped and fell, and police arrested him.

11. Police searched the areas through which WALLACE ran and located a Glock 19 handgun with a conversion device (also known as a "switch") attached to it near a fence in the snow. The gun is pictured below.



12. Switches can be made of either metal or a polymer commonly used in 3D-printers. Regardless of its material, a switch typically has three parts.

13. A switch can be installed with little technical knowledge in approximately one minute by substituting it for the original slide cover plate.

14. When a switch is installed on a pistol and the trigger is pulled, the pistol will fire until the trigger is released, or the magazine is empty. A pistol affixed with a switch can fire over 1,000 rounds per minute.

15. According to 26 U.S.C. § 5845(b), "the term 'machinegun' means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." The same provision adds that "machinegun" also means "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun." Under this definition, a switch itself is a "machinegun," even if it is not attached to a firearm. *See United States v. Dodson*, 519 F. App'x 344, 347–349 (6th Cir. 2013).

WALLACE's online presence

16. Investigators have had personal contact with WALLACE throughout the course of several other investigations and know what WALLACE looks like.

17. Investigators regularly monitor WALLACE's social media activity and know the Facebook account with the username **Youngest Bat** is WALLACE's because the account depicts numerous photographs of WALLACE.

18. This Facebook account also contains several photographs with WALLACE as the only individual depicted in the photo.

19. Investigators have also observed several "live" videos, which are videos posted in real-time, posted to this Facebook account that depict WALLACE, which indicates he is the primary user of the account.

20. These Facebook "live" videos are often posted by using a handheld electronic device, such as a cell phone.

4

21. On February 13, 2023, VCI Officer Tyler Tenbrink observed WALLACE's Facebook profile. Officer Tenbrink observed a Facebook story video post that WALLACE made and saved the video.

22. WALLACE is the only person seen on the video in which he is making a "rap" song while in a vehicle. In this video, WALLACE refers to a "switch" towards the end of the video while making a hand gesture that appears to imitate a firearm.

Text Conversation Between WALLACE and an unidentified individual

23. In 2021, while WALLACE was on state probation for a weapons charge, he was located at another probationer's home during a probation search, and police located numerous firearms. This was a violation of WALLACE's probation. As a result, investigators inspected the contents of WALLACE's phone, pursuant to the terms of his probation.

24. I located the following text conversations between WALLACE and an unidentified individual on WALLACE'S phone. The conversation excerpts below do not contain the entirety of the conversations between WALLACE and this unidentified individual, but rather only those relevant to this Continuation. For some of the slang terminology contained in the messages, I have translated the terms in brackets based on what I know these terms to mean in my training and experience as an investigator of firearms.

Text Conversation - August 29, 2021:

> WALLACE: Oh Fs where that's switch
> [firearm conversion device]
>
> WALLACE: That*

>UNIDENTIFIED INDIVIDUAL: &dat bitch been gone that video old asl.
>
>WALLACE: &Oh for what [face emoji] switch shoulda stayed
>
>UNIDENTIFIED INDIVIDUAL: #my nigga in da O got flicked wit it [friend got stopped by police while in possession of the firearm conversion device]
>
>UNIDENTIFIED INDIVIDUAL: unsave dese messages foo

<u>"Note" on WALLACE's phone</u>

25. I also located a "note" on WALLACE's phone, which reads as follows:

>Title: Verses
>
>Summary: Catch us sliding late night wit them 4 nicks guns longer than are arm bitch we call them glow sticks
>
>Source: Notes
>
>Labels:
>
>Body: Verses
>
>Catch us sliding late night wit them 4 nicks guns longer than are arm bitch we call them glow sticks
>Wanna be part of double O bitch you ain't cut enough
>3 . One arm out the window like I stiff armed his bitch two glockies wit extensions all I needed was a switch you mans got popped and ain't slide you ah bitch when we slide they know it's us because we empty all the clips like ,
>Like why you try to copy everything I do Like, like how you steppin and yo picture onna news

### Electronic Storage and Forensic Analysis

26. Based upon my training, experience, and participation in firearms investigations, I am aware of the following:

6

a. Illegal gun possessors and users often keep names and contact information of gun suppliers, purchasers, and others involved in gun possession and use on their electronic devices.

b. Illegal gun possessors and users often use electronic messaging or messaging apps, in addition to MMS, SMS text messages, social media, and voice call, to communicate with suppliers, purchasers, and others involved in illegal firearms on their electronic devices.

c. Illegal gun possessors and users often take pictures and videos of their illegal firearms, money, and associates which they store on their electronic devices or post onto social media via their electronic devices.

d. Global Position System (GPS) data on phones may show the location of an illegal gun user at a given time, which may provide corroborating evidence of illegal gun possession or instances of gun use.

e. User attribution data and usernames, passwords, documents, and browsing history can provide evidence that the device is being used by a gun possessor and can provide other useful evidence to the gun investigation.

f. Illegal gun possessors and users often use the internet to look up various information to support their illegal firearms activities.

27. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

28. *Forensic evidence.* As further described in **Attachment B**, this Application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crime described in the warrant, but also forensic evidence that establishes how the **Subject Device** was used, the purpose of its use, who used it, and

when. There is probable cause to believe that this forensic electronic evidence might be on the **Subject Device** because:

    a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.    Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.    The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

29.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Subject Device** consistent with the warrant. The examination may require authorities to employ techniques, including, but not limited to, computer-assisted scans of the entire medium that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

30. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## Conclusion

31. I submit that this Continuation supports probable cause for a search warrant authorizing the examination of the **Subject Device** described in **Attachment A** to seek the items described in **Attachment B**.